<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: | CHAPTER 11 |
| B. Moss Clothing Company, Ltd. |  |
| Debtor. |  |
|  | CASE NO.: 08-33980 (NLW) |
| Morris S. Bauer, Liquidating Trustee of B. Moss Clothing Company, Ltd. Liquidation Trust, | Adv. No.: 10-02313 |
| Plaintiff |  |
| v. | **OPINION** |
| Richard Moss, Barbara Savage, Fred Krawchick, Susan Krawchick, Marc Savage, Lauren Moss, Adam Krawchick, Todd Krawchick, Michael Savage and Matthew Savage, |  |
| Defendants. |  |

<pre>
FILED
JAMES J. WALDRON, CLERK
August 31, 2011
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Diana Reaves, Deputy
</pre>

**Before:    HON. NOVALYN L. WINFIELD**

<u>**A P P E A R A N C E S :**</u>

Larry K. Lesnik, Esq.
Norris, McLaughlin & Marcus, P.A
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ 08807
Attorney for Morris S. Bauer, Liquidating Trustee

Gary S. Jacobson, Esq.
Herold Law, P.A.
25 Independence Blvd.
Warren, NJ 07059
Attorney for Defendants

1

This matter is brought before the court by the former shareholders of the Debtor, Richard Moss, Barbara Savage, Fred Krawchick, Susan Krawchick, Marc Savage, Lauren Moss, Adam Krawchick, Todd Krawchick, Michael Savage and Matthew Savage ("Defendants") on a motion for dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Morris S. Bauer, Liquidating Trustee of B. Moss Clothing Company, Ltd. Liquidating Trust ("Liquidating Trustee") opposes the Defendants' motion, on the ground that the complaint is adequately pleaded. As set forth below, Count II of the Trustee's complaint is dismissed in part, but without prejudice, and with leave to amend.

This court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2), (E) and (H).

## STATEMENT OF FACTS

**A. Background**

On December 2, 2008 ("Petition Date"), B. Moss Clothing Company, Ltd. ("Debtor") filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code ("Bankruptcy Code"). As of the Petition Date, the Debtor operated various retail clothing establishments throughout the eastern United States. An Official Committee of Unsecured Creditors ("Creditors' Committee") was formed by the United States Trustee pursuant to § 1102(a)(1).[1] The Creditors' Committee retained Norris, McLaughlin and Marcus, P.A. as its

---

[1] Unless otherwise indicated, all "Section" or "§" references contained in this opinion are

2

counsel and Mahoney Cohen & Co., CPA, P.C. as its accountants. On July 31, 2009, this court entered an order confirming the First Modified Chapter 11 Plan of Orderly Liquidation Proposed by the Debtor and the Committee ("Plan"). Pursuant to the terms of the Plan, on the effective date, a Liquidating Trust was created and the Liquidating Trustee took title to all of the Debtor's assets including all causes of action held thereby. The Liquidating Trustee is represented by the same firm that represents the Creditors' Committee during the Chapter 11 case. The Liquidating Trustee commenced this adversary proceeding under 11 U.S.C. §§ 544, 548 and 550 to avoid and recover $2,581,431 paid to the Defendants approximately nine months prior to the Petition Date.

**B.  The Complaint**

The complaint has but two counts. In Count I the Liquidating Trustee seeks recovery of fraudulent transfers under § 544 and § 550 as well as N.J.S.A. 25:2-25 and/or N.J.S.A. 25:2-27. No subsections of either § 544 or the New Jersey statutes are specified. In Count II the Liquidating Trustee seeks recovery of fraudulent transfers under § 548 and § 550. In Count II only subsection (a)(1) of § 548 is specified as the basis for relief.

The factual basis for avoidance of the alleged fraudulent transfers is as follows:

a. Annual sales for the Debtor decreased consistently from 2002 to the Petition Date. (Complaint ¶ 11) A financial consultant retained by the Debtor in 2007 determined that the annual sales volume for each year prior to February were as follows:

| | | |
|---|---|---|
| 2002 | $64,010,000 | |
| 2003 | $63,209,000 | |
| 2004 | $60,019,000 | |

---

to the Bankruptcy Code of 1978 as amended through the date hereof.

3

|      |              |
|------|--------------|
| 2005 | $61,292,000  |
| 2006 | $55,082,000  |
| 2007 | $58,252,000  |

(*Id.* ¶ 12)

    b.    The Debtor's tax returns revealed similar numbers for the fiscal years 2005 through 2008:

|      |              |
|------|--------------|
| 2005 | $61,281,615  |
| 2006 | $55,100,118  |
| 2007 | $58,251,704  |
| 2008 | $50,664,718  |

(*Id.* ¶ 13)

    c.    The Liquidating Trustee contends that consistent with the reduction in sales volume the Debtor's tax returns for 2006 through 2008 demonstrate operating losses as follows:

|      |             |
|------|-------------|
| 2006 | $ 2,252,000 |
| 2007 | $   690,000 |
| 2008 | $ 3,389,000 |

(*Id.* ¶ 14)

    d.    The Debtor's audited financial statements showed operating losses of $2,386,000 for 2006, $933,000 for 2007, and $3,050,000 for 2008. (*Id.* ¶ 15) Further the same audited financial statements reveal net losses of $2,606,000 for 2006, $1,319,000 for 2007 and $3,574,000 (without the gain on a sale of real estate) for 2008. (*Id.* ¶ 16)

    e.    The Liquidating Trustee states that the financial projections for the 2009 fiscal year ending February 1st forecasted sales of $51,075,108 with an operating loss of $952,116 and a net loss of $1,097,073. (*Id.* ¶ 17) He further alleges that the Debtor's

|     |     |
| --- | --- |
|     | projections were generally inaccurate, and that in reality the 2009 sales were less than projected, by millions of dollars. (*Id.*) |
| f.  | The Debtor's CFO testified that in Spring 2007 the Debtor's principals were concerned about the Debtor's ability to survive. (*Id.* ¶ 20) In May 2007 Arnold Sanford Cohen ("ASC") was formally retained to seek a buyer for the Debtor. (*Id.* ¶ 19) |
| g.  | The complaint also states that the CFO further testified that by the summer of 2007 the Debtor's payments to vendors were starting to slow, and that after the Spring of 2007 sales continued to decline, and gross profit margins began to diminish. (*Id.* ¶¶ 20, 21) Additionally, in 2007 the Debtor's borrowing from outside sources increased significantly. (*Id.* ¶ 22). |
| h.  | In 2007 the Debtor discussed with ASC a possibility of the bankruptcy filing. (*Id.* ¶ 23). |
| i.  | The Liquidating Trustee avers that the Debtor's deepening financial problems caused it to sell a building and the real property located at 550 Meadowlands Parkway, Secaucus, New Jersey in January 2008. (*Id.* ¶ 24)  The Liquidating Trustee further states that the Debtor's CFO has testified that the sale paid the Debtor's secured debt in full (temporarily) and generated some working capital, but caused an increase in operating expenses because the Debtor was leasing the property it had just sold from the new owner. (*Id*. at ¶ 25)  The Liquidating Trustee also states that this lease expense, which is identified as "in the range of $500,000," was not included in the 2009 forecast, and thus the projected losses were understated. (*Id.* at ¶ 26) |
| j.  | Focusing on the period January and February 2008, the Complaint states that in a report prepared by the Debtor for its secured lender, the sales in January 2008 were shown to be 10.3% lower than in January 2007. (*Id*. at ¶ 28)  Furthermore, the Debtor's financial statement for the month ending February 2, 2008 reflected an operating loss of $1,179,087 for the month and a revised projected loss for the year of $3,005,183. (*Id.* at ¶ 29)  The Liquidating Trustee asserts that further "evidence of the Debtor's then rapidly deteriorating financial position is found in the decision of CIT to stop factoring receivables due from the Debtor in February 2008." (*Id.* at ¶ 30)  The complaint states that the Debtor's inability to continue to factor its receivables made it difficult for the Debtor's suppliers to continue to sell to the Debtor. (*Id.)* |

5

      k.    The complaint further states that on March 3, 2009 [sic], over the objection of its CFO, the Debtor disbursed $2,581,431 to each of its shareholders as follows:

| | |
|---|---|
| Richard Moss | $907,202 |
| Barbara Savage | $781,899 |
| Fred & Susan Krawchick J/T | $761,476 |
| Fred Krawchick | $ 16,471 |
| Susan Krawchick | $ 20,834 |
| Marc Savage | $ 12,222 |
| Lauren Moss | $ 14,712 |
| Richard Moss c/f Zachery | $ 14,712 |
| Adam Krawchick | $ 10,965 |
| Todd Krawchick | $ 12,656 |
| Michael Savage | $ 12,222 |
| Matthew Savage | $ 16,060 |

(*Id.* ¶¶ 31, 32)

      l.    In the penultimate paragraphs of the factual background the complaint avers that the payments to the Defendants either rendered the Debtor insolvent or left it with insufficient capital. (*Id.* ¶ 33) More globally, the complaint concludes its factual background with the statement that "[b]ased on the historical patterns as to its sales and losses, its initial forecast for its then current year, its actual operating results prior to the Transfers, the adverse impact on the Debtor's bottom line operating expenses from the sale of its real estate and the reasonable expectations for operating results for the foreseeable future, the transfer of $2,581,431 to its shareholders for absolutely no consideration by the Debtor on Mach 3, 2008 represents a fraudulent conveyance subject to avoidance and recovery on behalf of the Debtor's creditors." (*Id.* ¶ 34)

The counts of the complaint are more cursory. Count I simply incorporates all of the facts just recited and alleges upon information and belief (i) that the transfers to the Defendants were fraudulent under N.J.S.A. 25:2-25 and/or N.J.S.A. 25:2-27, (ii) that the Debtor did not receive any consideration for the transfers and (iii) that the transfers are avoidable under §§ 544 and 550. Count II similarly incorporates the factual background and alleges upon information and belief (i) that the transfers were made within two years of the Petition Date, (ii) that the

transfers were fraudulent, (iii) that either the transfers were made while the Debtor was insolvent or the Debtor became insolvent because of the transfers, or (iv) that the transfers left the Debtor with unreasonably small capital and/or were made while the Debtor incurred or believed that it had incurred debts that it would not be able to pay as they became due.  As a result, Count II asserts that the payments to the shareholders are avoidable under § 548(a)(1) and that the Liquidating Trustee may recover the full value of the transfers under § 550.

## **DISCUSSION**

The pending dismissal motion is emblematic of the motion practice that has resulted since Supreme Court and circuit precedent has made it clear that sufficient factual matter must be pleaded so that a plaintiff's claim is plausible on its face.  Defendants argue that the facts pleaded by the Trustee do no more than suggest an atmosphere or circumstances in which there is a possibility that fraudulent transfers were made by the Debtor to the Defendants.  While, as set forth *infra*, the court does find that the Liquidating Trustee's complaint is largely adequately pleaded, it also appears to the court that the Liquidating Trustee's counsel had substantial facts available to it such that the complaint could have been more carefully crafted, and the present motion practice avoided.  As previously noted, the Liquidating Trustee and his firm served as counsel to the Creditors' Committee during the Chapter 11, the Creditors' Committee and its counsel had the benefit of the Committee's financial consultants who undoubtedly prepared an analysis of the Debtor's prepetition financial condition, and, as evidenced by the complaint, counsel for the Liquidating Trustee had access to various reports prepared by the Debtor's professionals as well as the testimony of the Debtor's CFO.

### A. <u>Standard Governing a Rule 12(b)(6) Motion</u>

The Defendants' motion to dismiss is grounded in Fed. R. Civ. P. 12(b)(6), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012, which provides for dismissal of a complaint for failure to state a claim upon which relief can be granted.[2] In particular, with respect to both counts, Defendants argue that dismissal under Rule 12(b)(6) is appropriate because the Liquidating Trustee has failed to plead insolvency, and under Rule 9(b), made applicable to adversary proceedings by Bankruptcy Rule 7009, he has failed to plead fraud with particularity. The Defendants also claim that the complaint should be dismissed because it does not state a factually plausible basis to hold each Defendant liable for the entire sum of $2,581,431.

Under Rule 8(a)(2), made applicable by Bankruptcy Rule 7008, a pleading must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A motion under Rule 12(b)(6) tests the sufficiency of the factual allegations supporting the claimed relief. *See Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993) ("The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist'"). *See also Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 232 (3d Cir. 2008).

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court articulated a standard that requires a plaintiff to plead more than the mere possibility of relief in order to survive a motion to dismiss. 550 U.S. 544 (2007). The Supreme Court stated that a plaintiff is obliged to provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause

---

[2] Subsequent reference to the Federal Rules of Civil Procedure shall be as "Rule" and reference to the Federal Rules of Bankruptcy Procedure shall be as "Bankruptcy Rule."

of action…" *Id.* at 555.  There must be enough facts pleaded to raise the reasonable expectation that discovery will reveal evidence of the elements of the alleged claims.  *Id.* at 556.  In other words, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  The Supreme Court further refined its holding in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).  The Court reiterated that the plausibility standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id.* at 1949. Additionally the Court made it clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statement, do not suffice." *Id.*  And, determination of the plausibility of a claim for relief is a context-specific task "that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

The Third Circuit has instructed that when presented with a Rule 12(b)(6) claim a court should conduct a two-part analysis. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009).  First, the factual and legal elements of a claim should be separated. *Id.* at 210.  All of the complaint's well-pleaded facts must be accepted as true, but the court  may disregard any legal conclusions. *Id.*  Second, the court must then decide whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim. *Id.* at 211.  A complaint has to demonstrate  entitlement to relief "with its facts." *Id.*

Further, "[d]ismissal of a complaint under Rule 12(b)(6) can be based upon a plaintiff's failure to meet the heightened pleading requirements of [fraud pursuant to] Fed. R. Civ. P. 9(b), made applicable to bankruptcy proceedings pursuant to Fed. Bankr. R. P. 7009." *Forman v. Salzano (In re Norvergence, Inc.)*, 405 B.R. 709, 726 (Bankr. D.N.J. 2009).  It is well established that "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are

9

charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  "[A]llegations of 'date, place or time' fulfill these functions." *Id.*

However, a number of courts have concluded that a cause of action based on constructive fraud does not have to meet the heightened pleading standards of Rule 9(b). *In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417, 428-29 (Bankr. S.D.N.Y. 1998)(explaining that Rule 9(b) does not apply to claims of constructive fraudulent conveyance, because such claims are based on the financial condition of the debtor and the effect on the creditors, not on fraud); *China Res. Prods. (U.S.A.) Ltd. v. Fayda Int'l, Inc.*, 788 F.Supp. 815, 818 (D. Del. 1992)("Despite the similarity in the terms 'fraud' and 'fraudulent conveyance', the pleading requirements for fraud are not necessarily applicable to pleadings alleging a fraudulent conveyance.").  *See also In re Air Cargo, Inc.*, 401 B.R. 178, 192 (Bankr. D. Md. 2008); *Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.),* 343 B.R. 444, 460 (Bankr. S.D.N.Y. 2006); *Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.),* 327 B.R. 711, 717-18 (Bankr. D. Del. 2005); *contra Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1079 (7th Cir. 1997); *In re Oakwood Homes, Corp.,* 325 B.R. 696, 698 (Bankr. D. Del. 2005).  This court finds persuasive the reasoning contained in *White Metal* and will apply it in the matter at hand.

### B. Avoidance of the Transfers to the Debtor's Shareholders

The Defendants complain that the Liquidating Trustee's fraudulent transfer claims lack plausibility because:

> The Complaint does not recite the Debtor's assets and liabilities or net worth at any point in time. The Complaint does not state the amount of the Debtor's capital under any formulation at any time. The Complaint does not quantify or itemize the debt obligations of the Debtor before, at the time of, or after the Transfers. The Complaint does not assert what would have been a reasonable amount of capital for the Debtor to maintain at the time of the Transfers. No exhibits, financial or otherwise, are incorporated by reference in the Complaint.

(Defendant's Brief in Support of Notice of Motion to Dismiss Complaint 2)

If the Liquidating Trustee's complaint contained the factual detail sought by the Defendants it likely would more than meet the plausibility standard established by *Twombly* and *Igbal*. However, the degree of detail demanded by the Defendants exceeds the factual foundation required. As in *UPMC Shadyside,* the instant complaint is not as rich in factual detail as the court and the Defendants might prefer. Nonetheless, as described below the complaint largely sets forth sufficient allegations, when taken as true, to support fraudulent transfer claims.

Regrettably, the Liquidating Trustee does not specify which subsection of § 544 forms the basis for the relief that he has requested in Count I. The court presumes that he relies on § 544(b)(1) because he also cites to N.J.S.A. 25:2-25 and N.J.S.A. 25:2-27, which comprise part of the New Jersey Fraudulent Transfer Act.[3] Count I can be described as an "either/or" count. That is, the Liquidating Trustee alleges that based on the factual background he recites, either the transfers are avoidable as products of actual fraud under N.J.S.A. 25:2-25, or the transfers are avoidable because they are constructively fraudulent.

---

[3] Section 544(b)(1) provides, in pertinent part, that a trustee "may avoid any transfer of an interest of the debtor in property…that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502…" 11 U.S.C. § 544(b). Furthermore, "[t]he Uniform Fraudulent Transfer Act, as adopted into New Jersey law, authorizes [a trustee] to seek avoidance of a fraudulent transfer or obligation that it has made to or incurred for the benefit of a third party." *In re Cybergenics Corp.,* 226 F.3d 237, 241-42 (3d Cir. 2000).

Though a few more averments enumerating the badges of fraud that the Liquidating Trustee asserts form a basis for a claim of actual fraud under N.J.S.A. 25:2-25(a) would have made the complaint clearer and less susceptible to challenge, by reading the complaint mindful of the badges of fraud enumerated in N.J.S.A. 25:2-26, we can discern an adequate, if not well-pleaded claim.  "In determining whether the circumstances of a particular transaction give rise to the conclusion that the transferor intended to thwart or evade creditors, [so as to render it fraudulent,] courts generally look to factors commonly referred to as 'badges of fraud,'…[which] represent circumstances that so frequently accompany fraudulent transfers that their presence gives rise to an inference of intent." *Gilchinsky v. National Westminster Bank,* 159 N.J. 463, 476 (1999).  Under the New Jersey statute, badges of fraud that may be considered to determine actual fraudulent intent may include (i) whether the transfer was to an insider, and (ii) whether the debtor received consideration reasonably equivalent to the value of the transferred asset. N.J.S.A. 25:2-26(a) and (h).  The Defendants as shareholders are certainly insiders and the Debtor did not receive any consideration in return for the $2,581,431 that it paid to its shareholders.  The existence of even one badge of fraud "may cast suspicion on the transferor's intent." *Gilchinsky,* 159 N.J. at 477.  *See also Norvergence,* 405 B.R. at 732.  The presence of two badges of fraud are surely sufficient then to state a claim for actual fraud.  Further, the Liquidating Trustee identifies the Debtor's deteriorating sales volume, operating losses and net losses based on such documents as the Debtor's audited financial statements and tax returns. Taken as a whole, an adequate claim for actual fraud under § 544 and N.J.S.A. 25:2-25(a) has been stated.[4]

---

[4] The Defendants complain that the Liquidating Trustee should not be permitted to reference financial documents unless he appends them to the Complaint.  But, that is simply not

Likewise, the Liquidating Trustee has adequately stated a cause of action under N.J.S.A. 25:2-25(b) because funds were disbursed to the shareholders without any consideration flowing back to the Debtor, the funds were disbursed over the protest of the Debtor's CFO who believed the disbursement deprived the Debtor of needed working capital, and nine months later the Debtor filed its Chapter 11 Petition.[5]  These facts suggest that the payments made to the shareholders left the Debtor with unreasonably small assets for the conduct of its business, or that the lack of capital would cause the Debtor to incur debts beyond its ability to pay as they came due.  The Third Circuit has described unreasonably small capital as: … the inability to generate sufficient profits to sustain operations. Because an inability to generate enough cash flow to sustain operations must precede an inability to pay obligations as they become due, unreasonably small capital would seem to encompass financial difficulties short of equitable insolvency". *Moody v. Sec. Pacific Bus. Credit,* 971 F.2d 1056, 1070 (3d Cir. 1992). The facts provided by the Liquidating Trustee describe just such a condition.

Count II of the Liquidating Trustee's complaint also does not specify which subsections of § 548 form the basis for avoidance of the Debtor's payments to its shareholders.  Because the

---

the case.  *See ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)(On a 12(b)(6) motion courts may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference … and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.").  *See also U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002).

[5] N.J.S.A. 25:2-25(b) provides that a transfer made by a debtor is fraudulent as to a creditor if the transfer was made "without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) intended to incur or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due." N.J.S.A. 25:2-25(b)(1) - (2).

Case 10-02313-NLW    Doc 14    Filed 08/31/11    Entered 08/31/11 09:56:41    Desc Main
                            Document      Page 14 of 16

conduct described in Count II does not suggest an actual intent to hinder, delay or defraud the Debtor's creditors, the court presumes no claim is asserted under § 548(a)(1)(A)[6], notwithstanding the complaint's identification of § 548(a)(1) as a basis for relief. Alternatively, the claim for relief under § 548(a)(1)(A) is dismissed for failure to state a claim.

Under § 548(a)(1)(B)(ii)(I) a fraudulent transfer can be established if the debtor received less than reasonably equivalent value in exchange for the transfer and the debtor was insolvent on the date of the transfer, or became insolvent as a result of the transfer. Here, the Defendants rightly complain that the Liquidating Trustee has not pleaded any facts that suggest that when the Debtor made the payments to the shareholders it was insolvent or became insolvent as a result of the transfer. Operating losses are certainly an indication that insolvency may result at a future time, but without more does not establish insolvency at or about the time of the payments to the shareholders. As a result, this portion of Count II fails to state a claim on which relief can be granted.

Count II also alleges that the Debtor was left with unreasonably small capital and that the payments to the shareholders were made while the Debtor intended or believed that it had incurred debts that it would not be able to pay as they came due. The court infers that the Liquidating Trustee is claiming that the payments to the shareholders are avoidable pursuant to § 548(a)(1)(B)(ii)(III). The receipt of less than reasonably equivalent value in exchange for the payments to the shareholders is pleaded, but there is inadequate factual support for the Debtor's alleged intention or belief that debts would be incurred beyond its ability to pay such debts as

---

[6] A transfer is fraudulent under § 548(a)(1) if the debtor voluntarily "made such transfer or incurred such obligation with a actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A)

they matured. The lack of a specific statutory basis for the claim coupled with an inadequate factual foundation requires dismissal of a claim premised on § 548(a)(1)(B)(ii)(III). Counts that are "blanket assertions" do not state a claim. *In re Aphton Corp.*, 423 BR 76, 87 (Bankr. D. Del. 2010).

However, although once again the statutory basis is not stated, Count II does contain a claim under § 548(a)(1)(B)(ii)(II). The Trustee alleges that the Debtor received less than reasonably equivalent value for the payments to the shareholders, leaving the Debtor with unreasonably small capital. The same facts alleged by the Liquidating Trustee to support the claim in Count I under the New Jersey Fraudulent Transfer Act likewise support this claim.

### C.     Amendment of the Complaint

Rule 15(a)(2) provides that the court should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has unequivocally stated that the court should permit amendment "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Forman v. Davis*, 371 U.S. 178, 182 (1962). Though the Liquidating Trustee has not yet requested that the court authorize amendment of the complaint, to avoid the possibility of further unnecessary motion practice, the court will exercise its discretion sua sponte to afford the Liquidating Trustee 30 days to amend his complaint. There have been no prior requests for amendment, undue delay will not result, and creditors potentially have much to gain from a fully detailed complaint, as the recovery sought by the Liquidating Trustee exceeds $2.5 million.

Moreover, amendment is necessary because the complaint currently does not specify the amount of recovery sought from each defendant. The court presumes that the Liquidating Trustee does not expect to recover $2.5 million from each defendant, but rather expects to recover only the amount each shareholder received from the Debtor.

## **CONCLUSION**

As set forth at greater length above, the complaint fails to state a cause of action under § 548(a)(1), § 548(a)(1)(B)(ii)(I) and § 548(a)(1)(B)(ii)(III). However, the Liquidating Trustee is granted leave to amend the complaint in order to adequately state such claims and to specify the sums sought from each defendant.

_____
NOVALYN L. WINFIELD
United States Bankruptcy Judge